IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| MATRA PETROLEUM USA, INC. | § § | Case No. 19-34190 (DRJ) |
| Debtor. | § § § | |
| VLADIMIR LENSKIY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| MATRA PETROLEUM USA, INC. | § § § | Adv. No. 19-03582 |
| Defendant. | § § § | |

**PLAINTIFF VLADIMIR LENSKIY'S MOTION TO DISMISS AND MOTION TO REMAND**

Plaintiff Vladimir Lenskiy ("Lenskiy") files this Motion to Dismiss, Motion for Remand, and Motion for Relief from the Automatic Stay ("Motion") against Debtors Matra Petroleum USA, Inc., Matra Petroleum Oil & Gas, LLC, Matra Terra, LLC, Matra Petroleum Operating ("Debtors") and Melody Capital Management, LLC, Melody Business Finance, LLC, and Melody Capital Partners, LP ("Melody") and would respectfully show the Court as follows:

**I.   INTRODUCTION**

Debtors' bankruptcy filing and the Melody entities joinder in the removal of underlying litigation is nothing more than continued gamesmanship for which Debtors and Melody were admonished by the trial court. Indeed, Debtors have no executives to protect its interests. *See,* Exhibit 1 (listing Barskiy and Funygin as former CEOs of Matra USA)  Highlighting the impropriety of the bankruptcy filing and Melody's attempting to use that filing to its own ends is

the fact that Maxim Barskiy – who Debtor's own witnesses testified is no longer employed by any of the Matra Defendants[1] – signed the operative minutes of Matra USA that led to the bankruptcy filing as the Director and Chief Executive Officer of Matra USA. This is simply false. *Id*.; *See also*, Exhibit 2. The reality is that Debtors are nothing more than Melody's – a New York hedge fund with billions of dollars at its disposal – pawn being used in an effort to abscond with millions of dollars of assets while trying to avoid the state court claims of Lenskiy.

The context of the underlying dispute illustrates the animating purpose behind this bankruptcy filing:

- Lenskiy obtained a $2,476,039.49 arbitration award on February 13, 2019.

- Lenskiy moved to confirm this award in US District Court for the Southern District of Texas. Matra Petroleum USA—for no reason other than to delay Lenskiy from receiving his salary—moved to vacate and set aside the award.

- This motion was denied and Judge Ellison confirmed Lenskiy's on February 25, 2019 and entered a final judgment the next day.

- In March and April 2019, Matra and Melody embarked on a concerted strategy moving Matra's assets out of Lenskiy's reach. Melody threatened Lenskiy that unless he voluntarily agreed to convert his award into stock warrants in a soon-to-be-formed Matra entity, he would not receive nothing. Lenskiy refused.

- On May 3, Lenskiy learned that Melody and Matra had emptied Matra Petroleum USA's bank accounts, prompting him to file an *ex parte* request for a temporary restraining order. This request was granted. Melody and Matra immediately moved to dissolve the TRO—which was denied on May 8.

- Matra and Melody then filed a flurry of motions and appeals, which were all denied or otherwise disposed of.

---

[1] *See,* Exhibit 2, Deposition of Sergey Funygin at 7:11-13; 11:19-21; 12:1-5:

A: … in November of last year when Maxim Barskiy resigned, I was appointed CEO of Matra Petroleum USA
…
Q: Okay. What was the reason for Mr. Barskiy resigning?

A: Now he works as CEO of Russian company. As far as I know, this is public information. There have been announcements all over.

- On May 22, after two days and ten hours of live testimony, the trial court entered a temporary injunction, which made explicit factual findings that Matra and Melody had conspired to fraudulently transfer assets away from Lenskiy. The injunction also prohibited foreclosure on Matra assets. Melody and Matra nevertheless moved forward, prompting Lenskiy to file yet another motion seeking to enforce the trial court's injunction. Lenskiy's motion was granted.

- Matra and Melody nevertheless foreclosed. On June 6, Melody through a new entity—Bjorger Oil & Gas ("Bjorger")— acquired over $20 million of additional Matra secured-debt from Legacy Bank of Texas. With all of Matra's secured debt, and despite a clear injunction twice affirmed by the trial court, Melody foreclosed on 95% of Matra's assets, leaving it with "minimal oil & gas assets." (Dkt. #5 at 5).

With an August 19, 2019 trial date looming, Melody moved for a continuance. Matra did not join in this request. Melody's requested continuance was denied—which only then prompted the instant bankruptcy proceeding. Thus, taken together, this bankruptcy filing is not born out of a legitimate need to reorganize Matra. Rather, it is a Melody-driven attempt to deprive Lenskiy of his day in state court.

## II. FACTUAL BACKGROUND

In 2015, the Matra Petroleum USA hired Plaintiff Vladimir Lenskiy, an oil & gas executive, to serve as its Director of Corporate Affairs. Lenskiy suffered retaliatory acts from Matra Petroleum USA leading up to his improper termination from the company. This led him to file the arbitration *Vladimir Lenskiy v. Matra Petroleum USA, Inc.,* American Arbitration Association, Case No. 01-18-0001-0622 on October 11, 2018. At the conclusion of the arbitration, former Harris County District Judge Levi Benton awarded Plaintiff $2,476,039.49 on February 13, 2019. This award was then confirmed in the Southern District of Texas on February 25, 2019. Judge Ellison entered final judgment on February 26, 2019.

Despite having notice of Lenskiy's claim since February 2018, Debtors and Melody decided to funnel money away from Matra Petroleum USA and spend money on lawyers to hinder,

delay, and frustrate Lenskiy from recovering the salary he was owed. All the while Lenskiy suffered additional financial harm as a result.

As a result of the foregoing, Lenskiy was forced to seek a temporary restraining order on May 3, 2019 against Melody and Debtors to enjoin Melody from funneling money away from Matra Petroleum USA and preserve the status quo. In response, Debtors and Melody sought to dissolve the TRO, which the trial court denied after a hearing on May 8, 2019. Debtors and Melody then filed a mandamus on May 13, 2019, which they eventually withdrew after it was mooted by the Court's ruling on the application for a temporary injunction. On May 22, 2019, after a two-day, ten-hour hearing on the merits, the trial court entered a temporary injunction that among other things, enjoined Melody's foreclosure of certain debt:

> Moreover, the Court **ORDERS** that Melody; their officers, agents, servants, employees, and attorneys; and all other persons or entities in active concert with Melody who receive actual notice of this Order are enjoined from foreclosing on the $10,000,000.00 in debt, plus interest, incurred by Matra Petroleum USA, Inc. pursuant to the Fourth Amendment and Waiver to Loan Agreement dated as of March 30, 2018 between Matra Petroleum USA, Inc., the lenders party thereto, and Melody Business Finance.

In early June 2019, Melody acquired over $20 million of Debtors debt in early June, 2019. That a sophisticated New York hedge fund would spend such a sum on debt ostensibly not being serviced by an allegedly bankrupt entity is telling. Indeed, such a maneuver underscores Debtors solvency and the bad faith motives animating this bankruptcy.

Nevertheless, on June 10, 2019, Melody Business Finance filed a Notice of Foreclosure Sale indicating that it would conduct a foreclosure sale of the assets protected by the Court's injunction on May 22, 2019. *See,* Exhibit 3, Notice of Foreclosure Sale. Despite having pending discovery requests to both Debtors and Melody, neither informed Lenskiy of the foreclosure. Lenskiy was then forced to seek enforcement of the temporary injunction against Melody on June

19, 2019. After yet another hearing, the state court entered an order enforcing the temporary injunction.

With discovery completed and a trial date looming on August 19, 2019, Melody then sought to manufacture bases for delay. Melody first contended (to Plaintiff's counsel) that a continuance was needed to depose Lenskiy on the merits of the case, despite the facts that (1) Melody made this request with one week (5 working days) left in the discovery period; and (2) Debtors and Melody already deposed Plaintiff for hours asking him every conceivable question regarding the merits of the case. Exhibit 4 (7/12/2019 E-mail from Klingensmith to Johnson) ("The basis for the motion is the need for Plaintiff's deposition testimony …"). Despite the fact that the deposition was unnecessary, Lenskiy's counsel noted that Lenskiy would undertake the hardship of the cost of traveling to Houston and sitting for a deposition to preserve the trial date. *Id*. (7/12/2019 E-mail from Johnson to Klingensmith) ("To be clear, you have already taken his deposition once and covered, exhaustively, the merits of the case. You have also had ample time to request his deposition until a day ago – I was inclined to refuse, but offered you a date on the 23rd anticipating that this was gamesmanship to try to obtain a continuance. We are ready for trial in August, as we have repeatedly been saying."). Melody subsequently noticed the deposition for August 2, 2019 and proceeded to move for a continuance. On July 24, 2019, the Court denied Melody's motion for a continuance. On the morning of August 1, 2019, after Lenskiy had incurred the cost of traveling to Houston, he received notice of Matra's bankruptcy filing (at the direction of Melody) and Melody's improper joinder in the removal.

At bottom the bankruptcy filing represents Melody's attempted use of a bankruptcy proceeding to avoid (1) Lenskiy's state court claims; (2) a trial date of a case that is trial ready; and (3) the injunctions of the state trial court. The reason for doing so is to preserve Melody's

status as the sole secured creditor—a creditor who is over-secured by at least $100 million. Exhibit 5 (Matra Petroleum AB Annual Report) ("Proved oil and gas reserves increased to 22,758 (20,964) thousand barrels of oil equivalent ("mboe") with a Net Present Value of 265 million USA (151 million USD)."); *See also,* Exhibit 6 at 3(Matra Petroleum Audited Financials) (showing assets valued at approximately $101 million and total liabilities of approximately $80 million). Faced with a looming trial date and the likelihood of Lenskiy reaching assets valued in the hundreds of millions, Debtors and Melody resorted to bankruptcy as the latest in their pattern of hindrance, delay, and fraud. This gamesmanship should not be rewarded. Accordingly, Lenskiy brings the following motion to dismiss and motion for remand.

### III. ARGUMENTS & AUTHORITIES

#### a. Debtors' Bankruptcy Filing is Done in Bad Faith

##### i. Applicable standard for bad faith dismissal

Dismissal of a Chapter 11 case is appropriate if "cause" exists and if it is 'in the best interest of creditors and the estate. *In re Hatcher*, 218 B.R. 441, 448 (B.A.P. 8th Cir. 1998), aff'd, 175 F.3d 1024 (8th Cir. 1999). The statutory definition of "cause" includes, "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; inability to effectuate a plan; [and] **unreasonable delay** by the debtor that is prejudicial to creditors[.]" 11 U.S.C. § 1112(b)(1–3) (emphasis added). The § 1112 list is not exhaustive, and bankruptcy courts consider the following additional elements in evaluating whether cause exists:

(1) the debtor has only one asset, the property, in which it does not hold legal title;

(2) the case is essentially a two-party dispute capable of prompt adjudication in state court;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been

    unsuccessful in defending against the foreclosure in state court;

    (5) the filing of the petition effectively allows the debtor to evade court orders;

    (6) the debtor has no ongoing business to reorganize;

    (7) the debtor has few employees;

    (8) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce their rights.

*See In re Trident Assocs. Ltd. Partnership,* 52 F.3d at 131; *Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co.*), 212 B.R. 793, 802 (D.N.J.1997).

    Moreover, a debtor's good faith is a precondition to its right to pursue bankruptcy protection(s). *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."). This good faith standard is necessary to balance the interests of debtors and creditors, prevents abuse of the bankruptcy process by debtors "whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes," and protects the jurisdictional integrity of the bankruptcy courts by rendering "their powerful equitable weapons" available only to debtors with clean hands. *Id*.

    There is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); *see also, In re Dixie Broad., Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989) ("These factors include the timing of the

filing of the petition; whether the debtor is financially distressed; whether the petition was filed strictly to circumvent pending litigation; and whether the petition was filed solely to reject an unprofitable contract.") (internal quotations and citations omitted).

Likewise, courts "have specifically held that suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis." *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). In analyzing the purpose of a debtor's chapter 11 petition in the context of a motion to dismiss for bad faith filing, the courts regularly consider whether the bankruptcy was intended to obtain tactical advantage in litigation or negotiations. *In re Mirant Corp.,* 2005 WL 2148362, at *8 (Bankr. N.D. Tex. Jan. 26, 2005) (collecting cases). "Such use of chapter 11 is inappropriate, as is a filing intended to effect a nefarious purpose." *Id.*

"[N]umerous cases hold[] that it constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in [a] non-bankruptcy forum—whether that non-bankruptcy forum is a state court or a federal district court." *In re Silberkraus,* 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000), *aff'd,* 336 F.3d 864 (9th Cir. 2003) (collecting cases).

Finally, bad faith alone is sufficient to dismiss a bankruptcy, regardless of the possibility of a successful reorganization. *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.),* 235 F.3d 375, 379 (8th Cir. 2000); *see also, In re Mirant Corp.*, 03-46590, 2005 WL 2148362, at *6 (Bankr. N.D. Tex. Jan. 26, 2005) (citing *Cedar Shore*).

> ii. **Bad faith exists where the timing of filing indicates bankruptcy is intended to frustrate a state court suit.**

Courts have not hesitated to dismiss cases where the debtor filed bankruptcy to frustrate a pending state court suit—which is precisely what was done in the instant case. For example, in *In*

*re 1701 Commerce,* the Northern District of Texas found that the existence of improper pre-petition conduct coupled with litigation gamesmanship on the eve of trial warranted a finding of bad faith. 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012). Likewise, the *Silberkruas* court, also addressing a situation where the debtor filed bankruptcy to frustrate a state court action, concluded that: "The overall teaching of this whole collection of cases is that two party disputes in state court (or federal district court) should be resolved through the normal litigation process in those forums, and that it is bad faith to file bankruptcy instead of continuing with the normal litigation process in the nonbankruptcy forums." *Id.* at 906.

In that case, the court held that the bankruptcy was filed in bad faith, for the purpose of delaying and defeating a state court action, and sanctioned counsel:

> Debtor's timing in the filing of this case was strategic—Silberkraus filed just days before a status conference in state court where the state court was to set a trial date to try the state court specific performance action. Based on a review of these facts, the inference to be drawn is the same as the court drew in *Chinichian,* i.e., that Silberkraus filed bankruptcy for the purpose of delaying and defeating the pending state court specific performance action. Per *Chinichian,* it was bad faith for Debtor Silberkraus to seek to use bankruptcy to alter whatever result would have been achieved by continuing to litigate the state court action with Coppersmith and Seeley. Consequently, the Debtor Silberkraus should merely have continued to litigate the specific performance action with Coppersmith and Seeley in state court, instead of filing bankruptcy.

*Id.* at 904-05. The Ninth Circuit affirmed for the same reasons. 336 F.3d 864 (9th Cir. 2003).

Other courts have reached the exact same conclusion:

- *In re Dixie Broad.,* 871 F.2d at 1027 ("In light of these factors, we find no error with the bankruptcy court's determination that Dixie and Martin filed their petition in bad faith to justify lifting the stay. . . . As both the bankruptcy court and the district court noted, the petition was filed when it appeared that a ruling adverse to Dixie was imminent in state court litigation that had been underway for more than two years. Moreover, the state court litigation arose because Dixie had received a better offer for its radio station and refused to perform an executed sales agreement for the station. It does not appear that Dixie was in financial distress and needed the protection of the bankruptcy court.").

- *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380 (8th Cir. 2000) (affirming bankruptcy

court's dismissal of debtor's case for bad faith filing: "There is strong evidence to support the finding that Cedar Shore did not file bankruptcy to effectuate a valid reorganization, but rather to prevent the Muellers from pursuing their claims in state court.").

- *In re SGL Carbon*, 200 F.3d 154, 167 (3d Cir. 1999) (remanding case to district court to dismiss debtor's case for bad faith filing where debtor's purpose in filing bankruptcy was to gain a tactical litigation advantage in an antitrust lawsuit and place pressure on the plaintiffs to settle that suit).

- *In re Trust*, 526 B.R. 668, 680 (Bankr. N.D. Tex. 2015) ("Based on this precedent, the Court finds that the Debtor filed its bankruptcy petition as a litigation tactic, and concludes that such action is further cause to terminate the automatic stay.").

- *In re Leavitt*, 171 F.3d 1219, 1225 (9th Cir. 1999) ("Next, we consider the third factor, that is whether the debtor only intended to defeat state court litigation. Leavitt's actions clearly demonstrate an intent to discharge Soto's state court judgment against him. The timing of his first filing, within two weeks of Soto's judgment, and his three other filings demonstrate that avoidance of Soto's judgment was Leavitt's primary motive.").

- *Myers*, 491 F.3d at 125 ("We have no doubt that Bankruptcy Courts may reasonably find that bad faith exists where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose.") (internal quotations and citations omitted).

> iii. The timing and content of Debtors' filing indicates that it is done solely to frustrate Lenskiy's state court lawsuit.

Debtors' bankruptcy filing is merely the latest tactic in a years-long pattern of obfuscation, delay, and hindrance motivated exclusively by the goal of precluding Lenskiy from receiving his salary. While this pattern is described in the factual section above, the fact that the 157th Judicial District Court for Harris County made explicit factual findings regarding Debtors' intent cannot be emphasized enough. These findings—made after a ten-hour long evidentiary hearing—include:

- That Debtors and Melody have fraudulently transferred assets, incurred obligations, or attempted to fraudulently transfer assets with the actual intent to hinder, delay, or defraud;

- That Debtors and Melody actively planned to dissipate or divert funds from Matra, USA, restructure it out of existence, move assets to other entities beyond Lenskiy's reach, thus leaving Matra USA as an empty company with no assets or as otherwise insolvent all for the purpose of precluding Lenskiy from collecting his salary;

- That unless otherwise enjoined, the Debtors and Melody would continue to fraudulent transfer and dissipate assets, incur obligations, or otherwise restructure Debtors solely to frustrate Lenskiy.

Exh. __, Temp. Inj. at 3-5. These findings are not mere boilerplate; the state court went through a lengthy colloquy with counsel for Melody where it explicitly affirmed that the foregoing was, in fact, the Court's findings. *See, e.g.,* Exh. __ at ___ ("MR. SCOTT: That is a finding of the Court? THE COURT: It is … MR. SCOTT: And the Court does intend to make that factual finding? THE COURT: And it should include your client"). Despite being enjoined from using foreclosure as an avenue to transfer assets out from Lenskiy's reach, the Debtors and Melody nevertheless conspired to do so. This became the subject of a subsequent motion which and another lengthy hearing before the state court, which reiterated its earlier ruling enjoining the foreclosure sales. Exh. __, Order Granting Motion to Enf. Melody attempted to sidestep this subsequent ruling with a letter seeking to clarify the state court's ruling—to which Judge Garrison responded with an admonition to Melody to "stop playing games."

    iv. *Other factors demonstrate Debtors' bad faith*.

Moreover, several of the § 1112 factors are present here, warranting dismissal. First, this case has essentially become a two-party dispute between Lenskiy and Melody which is certainly capable of prompt adjudication in state court given the August 19th trial setting; the filing of the bankruptcy petition was done to evade the state court's orders, including its temporary injunction; Matra has few employees; as detailed above, the timing of its filing evidences an intent to delay or frustrate Lenskiy's legitimate efforts to enforce his rights; and Matra has no business left to reorganize as it admits that Melody has taken substantially all of its assets through foreclosure. *See,* Debt. Emerg. Mot. to Trans. Operatorship, (Dkt. #5) Para. 17 at 7.

With respect to this last point—that Matra has no assets left to organize—the Eighth Circuit's opinion in *In re Hatcher* is particularly applicable. There, the court, in affirming the bankruptcy court's decision to dismiss a chapter 11 proceeding as a bad faith filing, noted:

> In this case, [the Hatchers] *do not own* the property that is central to their reorganization. [Their] plan depends upon them keeping the land. [They] were on the brink of being forcibly removed from Allison's property. [They] state they filed their chapter 11 petition to save the house and farm and to retain possession of the property. [The Hatchers], operating as the debtor-in-possession, employ no non-insider employees. While the report of operations through November 30, 1996, shows a net income, a significant portion of the income was from the sale of assets (sixteen percent of the hay and straw, and ten percent of the cattle scheduled). [They] scheduled nine unsecured creditors with relatively small claims, with the exception of the debt owed [their] former counsel. Even though ownership of the land has been conclusively decided against them, [the Hatchers] continue to occupy the land and fight efforts to evict them. The bankruptcy was filed as a *litigation tactic* after [they] lost their fight in the Iowa *state courts*. [They] continue to pursue their starry-eyed dream that the land is theirs and that they can develop it. A reorganization without Allison's land would be *futile*; there can be no development business without the land and [the Hatchers] cannot continue their farming operation on this land. This Court cannot and will not rewrite the sale of [their] land to Allison, in essence mandating Allison's assets be placed in involuntary servitude for the exclusive use of [the Hatchers]. This Court finds that [the Hatchers] case and plan of reorganization were filed in *bad faith and are objectively futile*.

*In re Hatcher*, 218 B.R. 441, 448–49 (B.A.P. 8th Cir. 1998), aff'd, 175 F.3d 1024 (8th Cir. 1999).

*Hatcher* is directly applicable here—Debtors have little-to-no assets to organize. *See,* Debt. Emerg. Mot. to Trans. Operatorship, (Dkt. #5) Para. 17 at 7 ("Bjorger O&G has foreclosed on **substantially all** of the **Debtors' producing wells and related leases**. Bjorger O&G, **as the new owner**, seeks to transfer operatorship of the Foreclosed Assets to Rale Oil, but has been unable to because of the Debtors' fear of violating the TI.") (emphasis added)

The foregoing is merely a snapshot of the Debtors and Melody's conduct throughout the litigation. It provides the context necessary to appreciate that Debtors' bankruptcy filing is not brought out of a good faith motive to ensure an equitable distribution to all creditors but instead a bad faith filing to deprive Lenskiy of his day in court. These facts present a classic case of a bad faith chapter 11 filing which should therefore be dismissed.

### b. **Lenskiy's Motion to Remand: Mandatory and Permissive Abstention**

i. *Mandatory Abstention*.

Bankruptcy courts are courts of limited jurisdiction and are competent to hear cases arising in, arising under, or related to title 11. 28 U.S.C. §§ 157(a), 1334(b); *Stern v. Marshall*, 564 U.S. 462, 473 (2011). Mandatory abstention, which is defined by statute, marks the boundaries where a bankruptcy court may exercise this jurisdiction and requires that a court remand proceedings in cases where:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c). The Fifth Circuit has interpreted this statute to require mandatory abstention when: "(i) the claim has no independent basis for federal jurisdiction other than § 1334(b); (ii) the claim is a non-core proceeding ...; (iii) an action has been commenced in state court; and (iv) the action could be adjudicated timely in state court." *In re Moore*, 739 F.3d 724, 728–29 (5th Cir. 2014) (quoting *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007)); *In re ABC Dentistry, P.A.*, 16-34221, 2019 WL 913356, at *4 (Bankr. S.D. Tex. Feb. 21, 2019).

Lenskiy's fraudulent transfer claims satisfy the elements required for mandatory abstention to apply.

First, Lenskiy's request for abstention is timely because it has been asserted—along with a request for remand—within thirty days of removal. 28 U.S.C. § 1447(c) ("A motion to remand

the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

Second, Lenskiy's fraudulent transfer, conspiracy, alter ego, and suit on judgment claims are entirely premised on Texas state law. *See,* TEX. BUS. & COM. CODE § 24.001 *et seq.*; *In re Ramirez*, 413 B.R. 621, 626 (Bankr. S.D. Tex. 2009) ("The claims at issue are the TUFTA and common law fraud claims. Both of these claims are premised on state law, so the second requirement is met.").

Third, Lenskiy's claims have no independent basis for federal jurisdiction other than 28 U.S.C. § 1334(b). *Id*. ("The claims have no independent basis for federal jurisdiction other than § 1334(b). Therefore, the fourth requirement is met.").

Fourth, Lenskiy's claims were originally filed in Texas state court and then subsequently removed to this Court. *See, e.g., Lenskiy v. Matra Petroleum USA, Inc., et al.,* Cause No. 19-03582 (Bankr. S.D. Tex) (Dkt. #1).

Fifth, the Fifth Circuit has held that Lenskiy's fraudulent transfer claims are "related to" rather than core bankruptcy proceedings. *In re Galaz*, 765 F.3d 426, 431 (5th Cir. 2014) ("The district court treated Lisa's TUFTA claim as being "related to" the bankruptcy rather than a core bankruptcy claim. We agree with this characterization."); *see also, In re Taub*, 413 B.R. 81, 91 (Bankr. E.D.N.Y. 2009) ("holding fraudulent transfer adversary proceeding "is not a core proceeding. Rather, it is "related to" this bankruptcy case, in that its "outcome could conceivably affect the bankruptcy estate" and, as such, it is a non-core, "related to" proceeding.").

Finally, this matter can be timely adjudicated in state court. All discovery has been completed and this matter is trial ready. In fact, the Debtors filed this proceeding precisely to *avoid* timely adjudication in state court as this matter was set to be tried on August 19th.

Because all elements of 28 U.S.C. § 1334(c) are met, this Court must abstain from Lenskiy's claims against the Debtors. Accordingly, Lenskiy's claims—along with the entirety of this adversary proceeding—must be remanded to state court. *In re Castex Energy Partners LP,* AP 17-3454, 2018 WL 3068803, at *3 (S.D. Tex. June 21, 2018) ("As a result, § 1334(c)(2) mandates remand to state court of Castex's counterclaims and, thus, the entire adversary proceeding.").

    ii. *Permissive abstention.*

Having jurisdiction does not necessarily require its exercise. Section 1334 of title 28 empowers bankruptcy courts to abstain from presiding over matters.

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). In interpreting this law, the Fifth Circuit has noted that "Nothing...prevents a court from permissively abstaining under § 1334(c)(1) where some, but not all, of the requirements for mandatory abstention are met. The decision to abstain or not to abstain is committed to the discretion of the district court, and we will affirm unless the court clearly abused its discretion." *In re Friede Goldman Halter, Inc.*, 01-52173, 2019 WL 2487639, at *4 (Bankr. M.D. La. June 10, 2019) (citing *Gober v. Terra + Corp. (Matter of Gober)*, 100 F.3d 1195, 1206–07 (5th Cir. 1996) *abrogated on other grounds by Caton v. Trudeau* (*Matter of Caton*), 157 F.3d 1026, 1030 n. 18 (5th Cir.1998)). The permissive abstention analysis is driven by equitable considerations germane to the case. *Official Comm. of Unsecured Creditors. v. Thornton (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006). And these considerations counsel remand here.

First, there is no basis for federal jurisdiction over Lenskiy's claims other than 28 U.S.C. § 1334(c)(1).

Second, "state law issues do not merely predominate; they overwhelm:" this is an action seeking damages for pre-petition tortious conduct and is a non-core preceding which neither arises in nor under title 11. *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.* 75 F.Supp.2d 596 (S.D.Tex.1999) (noting that many courts have held that state law claims for pre-petition breaches of contract are not core matters); *see also In re Coho Energy, Inc.*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004); *Broyles v. U.S. Gypsum Co.,* 266 B.R. 778, 783 (E.D.Tex.2001) (noting that were all of a case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core).

Third, Lenskiy's damages are limited to Debtors' pre-petition tortious conduct, making him—a non-debtor—the party with the most significant interest in the outcome of this adversary proceeding. *In re Coho Energy, Inc.*, 309 B.R. at 222 ("[B]y virtue of Citation's acquisition of Coho's rights to the leases during the bankruptcy case, Coho's damages in the Adversary Proceeding are limited to those that accrued prior to the sale. Thus, it appears that Citation, a non-debtor, is the party with the most significant economic interest in the outcome of the Adversary Proceeding.").

Fourth, the matters at issue here can be timely adjudicated before the 157th District Court—a venue already intimately familiar with both the law and the facts of this particular dispute. *Id.* The state court's heavy investment of resources in this matter—numerous motions were filed and hearings were held over a truncated three-month period—also demonstrates that reasons of judicial economy and efficiency of administration heavily counsel in favor of remand. *In re Acis Capital Mgmt.*, L.P., 584 B.R. 115, 147 (Bankr. N.D. Tex. 2018), appeal dismissed, 3:18-CV-1056-D, 2019 WL 3228916 (N.D. Tex. July 18, 2019) (noting that bankruptcy court "starting fresh" after

removal of a heavily litigated state court disputed exclusively involving state law claims favors remand).

Fifth, Lenskiy's claims cannot be heard before this Court because he has a Seventh Amendment right to a jury trial on his claims against Debtors. *Matter of Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1336 (5th Cir. 1995) ("[T]he Supreme Court held that litigants in a fraudulent conveyance action have a Seventh Amendment right to a jury trial.") (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 53, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989) ). Because this Court lacks full judicial power over Lenskiy's claims, and out of an interest in judicial economy, it should exercise its permissive abstention power and remand this matter to state court.

Sixth, this Court's retention of Lenskiy's claims would achieve an inequitable result. Debtors' bankruptcy filing comes as the latest in a long line of feints and ploys to avoid paying Lenskiy his salary. There is no basis to think that proceeding before this Court would result in an equitable distribution to all creditors—including Lenskiy. . *In re Acis Capital Mgmt.*, L.P*.,* 584 B.R. at 147 (noting possibility of equitable distribution to creditor counseled in favor of bankruptcy court refusing to abstain). Rather, the motivating purpose behind this bankruptcy—particularly on the even of Lenskiy's state court trial—is to deprive him of any distribution whatsoever. *Id.*

Seventh, as detailed in Section __ *supra,* the purpose for which bankruptcy jurisdiction has been sought is for delay. This proceeding has been brought in bad faith and thus this Court, guided by equitable principles, should abstain. *Id*.

Eighth, this dispute is nothing more than a two-party dispute between Lenskiy and Matra (and its conspirators, including Melody). Under such circumstances, this Court should abstain. *See e.g. In re AXL Industries, Inc.,* 127 B.R. 482, 484 (S.D.Fla.1991); *In re Rand Int'l Leisure Prods.,*

*LLC,* 2010 Bankr.LEXIS 2021 (Bankr.E.D.N.Y. June 18, 2010) (noting that if an involuntary petition is "essentially the result of an ongoing two-party dispute", then it would be appropriate for the Court to abstain from the case); *In re Ishaky,* 2010 WL 935572 (Bankr.E.D.N.Y. March 11, 2010) ("The Court finds this to be a two party dispute in which the parties have adequate remedies in State Court"); *In re AMC Investors, LLC,* 406 B.R. 478, 488 (Bankr.D.Del.2009) (commentating that if bankruptcy courts were to entertain two-party disputes, then it would "transform" the bankruptcy courts into a collections device); *In re Mountain Dairies, Inc.,* 372 B.R. 623 (Bankr.S.D.N.Y.2007); *In re ELRS Loss Mitigation, LLC,* 325 B.R. 604, 634 (Bankr.N.D.Okla.2005).

Finally, this case is a mirror image of *Halter,* with the facts overwhelmingly weighing in favor of permissive abstention. As the *Halter* court noted:

> First, it is undisputed that the action was commenced in state court. Second, the action can be timely adjudicated in state court. Lewis's counsel informed the court that prior to Trinity's removal, the case was on an accelerated trial schedule in state court but that its removal has compromised that accelerated schedule. Trinity disagrees but offered nothing to support its claim that the state court will not reimpose an accelerated schedule should this case be remanded. But even if Lewis cannot recover his accelerated trial schedule, it would be inequitable to hold the delay against Lewis when Trinity's removal alone interrupted the state court proceedings.
>
> Additionally, the predominant issues in the case are based on state law claims, an equitable consideration that is undeniably germane.

*In re Friede Goldman Halter, Inc.*, 2019 WL 2487639, at *4–5. Like *Halter,* this case was: commenced in state court; placed on accelerated trial schedule because it grew out of a request for a temporary injunction; and compromised by Debtors bad faith bankruptcy filing—which was done for purposes of delay. *Id*. Furthermore, it would be inequitable to hold this delay against Lenskiy—particularly with his state court trial date set for August 19th—because of Debtors actions. *Id*. Finally, the predominant, indeed exclusive, issues in this case are state law fraudulent

transfer, alter ego, and conspiracy claims. *Id*. This predominance is an undeniably germane equitable consideration. *Id*.

While related to the abstention principles articulated above, another practical concern counsels a lift of the automatic stay and remand. As detailed above, Debtors filing for bankruptcy on the eve of Lenskiy's trial caused him significant prejudice because that case is trial ready. *O'Riorden v. Johnson & Johnson*, 19-CV-10751-ADB, 2019 WL 2371782, at *2 (D. Mass. June 5, 2019) ("[R]emoval will cause significant prejudice to Plaintiff where her case was nearly trial-ready in Superior Court after pending for almost two years."). Trial before the state court—currently set for August 19th—will be significantly sooner than any trial would occur before this Court and will be presided over by Judge Garrison, who has intimate familiarity with the facts and procedural posture of this case. *Id*. ("Plaintiff is slated to have a December 4, 2019 trial date, which is significantly sooner than any trial would occur were Plaintiff's case heard in Delaware, and that trial will be presided over by Judge Heidi Brieger, who oversees the Asbestos Litigation docket and therefore has deep familiarity with this case and others like it.").

For the foregoing reasons, this Court should permissively abstain from this adversary proceeding and remand this matter back to the 157th Judicial District Court of Harris County, Texas.

## IV. PRAYER

Accordingly, this Court should dismiss this Chapter 11 proceeding; mandatorily or permissively abstain under 28 U.S.C. § 1334 from hearing this adversary proceeding and remand this lawsuit back to state court; or alternatively, remand Lenskiy's claims against Melody back to state court as trial ready.

DATED: August 4, 2019

                Respectfully submitted,

                */s/ Logan E. Johnson*
                Logan E. Johnson
                State Bar No. 24013855
                SD Tex. Fed. Bar No.
                SCHIFFER HICKS JOHNSON, PLLC
                700 Louisiana, Suite 2650
                Houston, Texas 77002
                Tel:  713-357-5150
                Fax:  713-357-5160
                ljohnson@shjlawfirm.com

                **ATTORNEY-IN-CHARGE FOR PLAINTIFF VLADIMIR LENSKIY**

OF COUNSEL

Andy S. Hicks
Texas Bar No. 24032419
S.D. Tex. ID No. 30625
Varant Yegparian
Texas Bar No. 24070893
S.D. Tex. ID No. 2385654
SCHIFFER HICKS JOHNSON PLLC
700 Louisiana, Ste. 2650
Houston, Texas 77002
Tel. 713.357.5150
Fax. 713.357.5160
ahicks@shjlawfirm.com
vyegparian@shjlawfirm.com