**EXHIBIT 6**

# Matra Petroleum USA, Inc.
**Consolidated Financial Statements**
**December 31, 2018 and 2017**

MATRA_00000005

# Matra Petroleum USA, Inc.
## Index
### December 31, 2018 and 2017

|  | Page(s) |
|---|---|
| **Report of Independent Auditors** | 1–2 |
| **Consolidated Financial Statements** | |
| Balance Sheets | 3 |
| Statements of Operations | 4 |
| Statements of Stockholders' Equity | 5 |
| Statements of Cash Flows | 6 |
| Notes to Financial Statements | 7–28 |

MATRA_00000005.00002



**Report of Independent Auditors**

To the Board of Directors and Member of
Matra Petroleum USA, Inc.

We have audited the accompanying consolidated financial statements of Matra Petroleum USA, Inc. (the "Company"), which comprise the consolidated balance sheet as of December 31, 2018, and the related consolidated statements of operations, stockholders' equity, and cash flows for the year then ended.

***Management's Responsibility for the Consolidated Financial Statements***

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

***Auditors' Responsibility***

Our responsibility is to express an opinion on the consolidated financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error. In making those risk assessments, we consider internal control relevant to the Company's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

MATRA_00000005.00003



### Opinion

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Matra Petroleum USA, Inc. and its subsidiaries as of December 31, 2018, and the results of their operations and their cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

### Emphasis of Matter

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 2 to the consolidated financial statements, the Company's ongoing cash flows from current operations will not be adequate to meet its working capital needs which raises substantial doubt about its ability to continue as a going concern. Management's plans in regard to these matters are described in Note 2. The financial statements do not include any adjustments that might result from the outcome of this uncertainty. Our opinion is not modified with respect to this matter.

### Other Matter

The consolidated financial statements of the Company as of December 31, 2017 and for the year then ended were audited by other auditors whose report, dated April 27, 2018, expressed an unmodified opinion on those statements.

*PricewaterhouseCoopers LLP*

Houston, Texas
April 30, 2019

2

MATRA_00000005.00004

**Matra Petroleum USA, Inc.**
**Consolidated Balance Sheets**
**December 31, 2018 and 2017**

| (dollar amounts in thousands) | | 2018 | | 2017 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current assets | | | | |
| Cash | $ | 965 | $ | 480 |
| Restricted cash | | 162 | | 2 |
| Accounts receivable - oil and natural gas production | | 726 | | 1,160 |
| Accounts receivable - other | | 57 | | 116 |
| Prepaid expenses and other | | 76 | | 111 |
| Inventory | | 238 | | 170 |
| Fair value of derivative contracts | | 129 | | - |
| Total current assets | | 2,353 | | 2,039 |
| Property and equipment - at cost | | | | |
| Proved oil and natural gas properties, | | | | |
| successful - efforts method of accounting | | 104,551 | | 84,886 |
| Other property and equipment | | 688 | | 645 |
| Total property and equipment | | 105,239 | | 85,531 |
| Accumulated depreciation, depletion and amortization | | (6,027) | | (4,299) |
| Total property and equipment, net | | 99,212 | | 81,232 |
| Deposits | | 250 | | 250 |
| Total assets | $ | 101,815 | $ | 83,521 |
| **Liabilities and Stockholders' Equity** | | | | |
| Current liabilities | | | | |
| Accounts payable | $ | 2,581 | $ | 1,520 |
| Accrued liabilities | | 3,217 | | 2,391 |
| Fair value of derivative contracts | | - | | 382 |
| Current maturities of term loans | | 51,603 | | - |
| Current maturities of revolving credit facility | | 19,956 | | - |
| Current maturities of capital lease obligations | | 148 | | 113 |
| Total current liabilities | | 77,505 | | 4,406 |
| Revolving credit facility | | - | | 19,922 |
| Term loans | | - | | 33,420 |
| Capital lease obligation | | 59 | | 123 |
| Asset retirement obligation | | 1,842 | | 1,011 |
| Total liabilities | | 79,406 | | 58,882 |
| Commitments and contingencies (Note 10) | | | | |
| Mezzanine equity | | | | |
| Series A preferred stock | | 1,795 | | 1,795 |
| Stockholders' equity | | | | |
| Common stock, $0.001 par value; 1,000 shares | | | | |
| authorized, issued and outstanding | | - | | - |
| Additional paid-in capital | | 50,919 | | 48,719 |
| Accumulated deficit | | (30,305) | | (25,875) |
| Total stockholders' equity | | 20,614 | | 22,844 |
| Total liabilities and stockholders' equity | $ | 101,815 | $ | 83,521 |

The accompanying notes are an integral part of these consolidated financial statements.

MATRA_00000005.00005

**Matra Petroleum USA, Inc.**
**Consolidated Statements of Operations**
**Years Ended December 31, 2018 and 2017**

| (dollar amounts in thousands) | | 2018 | | 2017 |
|---|---|---|---|---|
| **Revenues** | | | | |
| Crude oil | $ | 7,070 | $ | 4,957 |
| Natural gas | | 3,773 | | 3,548 |
| Other income | | 203 | | 729 |
| Total revenues | | 11,046 | | 9,234 |
| **Costs and expenses** | | | | |
| Lease operating | | 5,679 | | 4,665 |
| Production taxes | | 517 | | 405 |
| Depreciation, depletion, amortization and acccretion | | 1,838 | | 1,377 |
| General and administrative | | 4,398 | | 4,394 |
| Gain from bargain purchase of acquisition of oil and natural gas properties | | (5,186) | | - |
| Total costs and expenses | | 7,246 | | 10,841 |
| Loss from operations | | 3,800 | | (1,607) |
| **Other income and (expense)** | | | | |
| Net loss on derivative contracts | | (427) | | (109) |
| Interest expense | | (7,803) | | (6,401) |
| Total other income and (expenses), net | | (8,230) | | (6,510) |
| Net loss before provision for income taxes | | (4,430) | | (8,117) |
| Provision for income taxes | | | | - |
| Net loss | $ | (4,430) | $ | (8,117) |

The accompanying notes are an integral part of these consolidated financial statements.

MATRA_00000005.00006

**Matra Petroleum USA, Inc.**
**Consolidated Statements of Stockholders' Equity**
**Years Ended December 31, 2018 and 2017**

*(dollar amounts in thousands)*

| Description | Mezzanine Equity Series A Preferred Shares | Mezzanine Equity Series A Preferred Amount | Common Stock Shares | Common Stock Amount | Additional Paid-in Capital | Retained Earnings | Total |
|---|---|---|---|---|---|---|---|
| **Balances at December 31, 2016** | 100 | $ 1,795 | 1,000 | $ – | $ 42,924 | $ (17,758) | $ 25,166 |
| Capital contributions | – | – | – | – | 3,960 | – | 3,960 |
| Share based compensation | – | – | – | – | 1,835 | – | 1,835 |
| Net loss | – | – | – | – | – | (8,117) | (8,117) |
| **Balances at December 31, 2017** | 100 | 1,795 | 1,000 | – | 48,719 | (25,875) | 22,844 |
| Capital contributions | – | – | – | – | 2,200 | – | 2,200 |
| Share based compensation | – | – | – | – | – | – | – |
| Net loss | – | – | – | – | – | (4,430) | (4,430) |
| **Balances at December 31, 2018** | 100 | $ 1,795 | 1,000 | $ – | $ 50,919 | $ (30,305) | $ 20,614 |

The accompanying notes are an integral part of these consolidated financial statements.

MATRA_00000005.00007

# Matra Petroleum USA, Inc.
## Consolidated Statements of Cash Flows
## Years Ended December 31, 2018 and 2017

| (dollar amounts in thousands) | | 2018 | | 2017 |
|---|---|---|---|---|
| **Cash flows from operating activities** | | | | |
| Net loss | $ | (4,430) | $ | (8,117) |
| Adjustments to reconcile net loss to net cash | | | | |
| used in operating activities | | | | |
| Depreciation, depletion and amortization expense | | 1,837 | | 1,377 |
| Share based compensation | | - | | 1,835 |
| Net loss on derivative contracts | | 427 | | 109 |
| Net cash receipts on derivative contracts | | (951) | | 662 |
| Gain from bargain purchase of | | | | |
| acquisition of oil and natural gas properties | | (5,186) | | - |
| Amortization of debt discount and deferred | | | | |
| issuance costs | | 331 | | 1,260 |
| Interest paid in kind | | 6,163 | | 3,894 |
| Changes in operating assets and liabilities | | | | |
| Accounts receivable - oil and natural | | | | |
| gas production | | 434 | | (400) |
| Inventory | | 11 | | (7) |
| Other current assets | | 92 | | 224 |
| Accounts payable and accrued liabilities | | 1,024 | | (350) |
| Net cash provided by (used in) operating activities | | (248) | | 487 |
| **Cash flows from investing activities** | | | | |
| Additions to oil and natural gas properties | | (6,766) | | (5,172) |
| Additions to other property and equipment | | - | | (6) |
| Net cash used in investing activities | | (6,766) | | (5,178) |
| **Cash flows from financing activities** | | | | |
| Capital contributions | | - | | 3,960 |
| Term loan advances | | 7,977 | | - |
| Term loan repayment | | (210) | | - |
| Payments on capital leases | | (64) | | (107) |
| Cash paid for finance costs | | (44) | | (210) |
| Net cash provided by (used in) financing activities | | 7,659 | | 3,643 |
| Net decrease in cash and cash equivalents | | 645 | | (1,048) |
| **Cash and cash equivalents** | | | | |
| Beginning of year | | 482 | | 1,530 |
| End of year | $ | 1,127 | $ | 482 |
| **Noncash investing and financing activities** | | | | |
| Change in asset retirement costs | $ | 3 | $ | 2 |
| Asset retirement obligations acquired | | 718 | | - |
| Interest paid in kind | | 6,163 | | - |
| Capital expenditures included in accounts payable | | | | |
| and accrued liabilities | | 870 | | - |
| Assumption of debt | | 4,000 | | - |
| Issuance of shares | | 2,200 | | - |
| **Supplemental disclosure of cash flows information** | | | | |
| Interest paid | $ | 1,303 | $ | 1,247 |
| Income tax paid | | - | | - |

The accompanying notes are an integral part of these consolidated financial statements.

MATRA_00000005.00008

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

1.    **Organization and Business**

Matra Petroleum USA, Inc. ("Matra USA") was organized September 12, 2013 as a Delaware corporation.  Matra USA and its subsidiaries (collectively, the "Company") are focused on the acquisition of oil and natural gas properties and the exploration and production of conventional and unconventional oil and natural gas assets.  The Company's properties are located in Carson, Gray, Hutchinson, and Moore counties in the Panhandle area of Texas.  The Company maintains offices in Houston, Texas and Borger, Texas.

The following subsidiaries are included within the consolidated financial statements:

- Matra Oil & Gas, LLC ("Matra O&G"), formerly known as PG-M International, LLC

- Matra Petroleum Operating, LLC ("Matra Operating"), formerly known as PG-M Operating, LLC

- Matra Terra, LLC ("Matra Terra")

All the above subsidiaries are organized as Texas corporations or limited liability companies.

2.    **Liquidity**

The accompanying consolidated financial statements have been prepared assuming that the Company will continue as a going concern, which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business.  The Company adopted Financial Accounting Standards Board ("FASB") Accounting Standards Update ("ASU") No. 2014-15, *Presentation of Financial Statements – Going Concern (Subtopic 205-40),* effective January 1, 2017, which requires the Company to make certain disclosures if it concludes that there is substantial doubt about the entity's ability to continue as a going concern within one year from the date of the issuance of these financial statements.  The Company has incurred losses for both the years ended December 31, 2018 and 2017 and has a working capital deficiency at both December 31, 2018 and 2017.  Additionally, the Company was not in compliance with certain covenants contained in the Company's term loans.  Failure to comply with the covenants result in an event of default allowing the lender to demand payment immediately.  The Company does not have sufficient liquidity to repay the debt due September 30, 2019 and December 31, 2019 should the lender demand payment.  The Company has obtained waivers from the lenders for covenant violations as of December 31, 2018.  The Company was not in compliance with certain other covenants as of January 1, 2019.  On April 26, 2019 the Company signed a forbearance agreement which waived all covenant violations for periods from December 31, 2018 to May 26, 2019. During the fourth quarter of 2018, the price of oil began to decline, effecting the profitability of the extraction industry.  The Company has implemented cost cutting measures as a response to this price decline in order to maintain compliance with its covenants.  The management of the Company is working with investors and lenders in order to secure cash to refinance and/or repay the existing liabilities, however, there was no binding agreements signed to date.

7

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

3. **Basis of Presentation and Summary of Significant Accounting Policies**

**Basis of Presentation**
The consolidated financial statements have been prepared in U.S. dollars using accounting principles generally accepted in the United States of America ("U.S. GAAP").  All material intercompany transactions and balances have been eliminated in the consolidation.

**Cash, Cash Equivalents and Restricted Cash**
The Company considers all highly liquid investments with an original maturity of three months or less to be cash equivalents.  There were no cash equivalents as of December 31, 2018 or 2017.

The Company early adopted the guidance in Accounting Standards Update No. 2016-18, *Statement of Cash Flows (Topic 230): Restricted Cash* (ASU 2016-18), in 2016, which requires restricted cash to be included in cash and cash equivalents when reconciling the beginning-of-period and end-of-period total amounts shown in the statements of cash flows.

The following table provides a reconciliation of cash, cash equivalents and restricted cash reported within the consolidated balance sheets to the same such amounts shown in the consolidated statements of cash flows.

| | 2018 | | 2017 | |
|---|---|---|---|---|
| Cash | $ | 965 | $ | 480 |
| Restricted cash | | 162 | | 2 |
| Cash, cash equivalents and restricted cash as shown in the consolidated statements of cash flows | $ | 1,127 | $ | 482 |

The Term Loan described further in Note 5 includes restrictions on the use of the cash proceeds until certain oil and natural gas production targets are met.  Cash subject to such restrictions is classified as restricted cash on the accompanying consolidated balance sheets.

**Accounts Receivable - Oil and Natural Gas Production**
Receivables from the sale of oil and natural gas and from joint interest owners are generally unsecured.  Allowance for doubtful accounts are determined based on management's assessment of the creditworthiness of the customer.  Past due accounts are written off against the allowance for doubtful accounts only after all the collection attempts have been exhausted.  At December 31, 2018 and 2017, management believed all balances were fully collectible such that no allowance for doubtful accounts was deemed necessary.

**Inventory**
Inventory consists of oil production that has not yet been delivered and is valued at the lower of average production costs or market.  Any valuation allowances of inventories are recorded as reductions to the carrying values of the inventory included in the Company's consolidated balance sheets and as charges to lease operating expense in the consolidated statements of operations.

8

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

### Oil and Natural Gas Properties

The Company follows the successful efforts method of accounting for its oil and natural gas activities.  Using this method of accounting, costs associated with the acquisition, drilling and equipping of successful exploratory wells and the cost of development wells are capitalized and depleted by the units-of-production method over the life of the related reserves.  Lease acquisition costs are amortized over total proved reserves and all other capitalized costs are amortized over proved developed reserves.  Estimated future abandonment and site restoration costs are included in the amortization base, and estimated salvage values are taken into account in the depletion calculation.  Geological and geophysical costs, delay rentals and drilling costs of unsuccessful exploratory wells are charged to expense as incurred.  Reserve estimates on proved properties and evaluation and impairment of proved and unproved properties are based on subjective engineering and management judgment and, as such, are inherently imprecise.  Accordingly, changes in these estimates will occur as additional information becomes available in the future.

All of the Company's oil and natural gas properties are proved.  The Company performs its impairment review of proved oil and natural gas properties on a depletable unit (field) basis.  The Company compares expected undiscounted future cash flows at the depletable unit level to the net book value of the asset.  If the future undiscounted cash flows, based on the Company's estimate of future oil and natural gas prices, operating costs, anticipated production from proved reserves, and other relevant data, are lower than the net book value, the capitalized cost is reduced to fair value.  Significant inputs used to determine the fair values of proved properties include estimates of: (i) reserves; (ii) future operating and development costs; (iii) future commodity prices, and (iv) a market-based weighted average cost of capital rate.

### Oil and Natural Gas Reserve Quantities

Estimates of the Company's producing and nonproducing oil and natural gas reserves as of December 31, 2018 and 2017 were based on a report prepared by an independent, third party engineer.  Estimates of proved reserves are based on the quantities of oil and natural gas that engineering and geological analyses demonstrate, with reasonable certainty, to be recoverable from established reservoirs in the future under current operating and economic parameters.

Reserves and their relation to estimated future net cash flows impact the depletion and impairment calculations.  As a result, adjustments to depletion and impairment are made concurrently with changes to reserve estimates.  The accuracy of the Company's reserve estimates is a function of many factors including the quality and quantity of available data, the interpretation of that data, the accuracy of various mandated economic assumptions, and the judgments of the individuals preparing the estimates, all of which could deviate significantly from actual results.  As such, reserve estimates may materially vary from the ultimate quantities of oil and natural gas eventually recovered.

The estimates of proved reserves materially impact depreciation, depletion, and amortization ("DD&A") expense and impairment expense.  If the estimates of proved reserves decline, the rate at which the Company records DD&A expense will increase or impairment could exist, reducing future net income.  Such a decline may result from lower market prices, which may make it uneconomic to drill for and produce from higher-cost fields.

MATRA_00000005.00011

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

### Other Property and Equipment

Other property and equipment consists primarily of vehicles and office equipment and is stated at cost. Depreciation is calculated using the straight-line method over the assets' estimated useful lives.

### Environmental Expenditures and Loss Contingencies

The Company is subject to extensive federal, state and local environmental laws and regulations. These laws regulate the discharge of materials into the environment and may require the Company to remove or mitigate the environmental effects of the disposal or release of petroleum or chemical substances at various sites. Environmental expenditures are expensed or capitalized depending on their future economic benefit. Expenditures that relate to an existing condition caused by past operations and that have no future economic benefit are expensed. Liabilities for expenditures of a noncapital nature are recorded when environmental assessment and/or remediation is probable, and the costs can be reasonably estimated. Such liabilities are generally not discounted unless the timing of cash payments for the liability or component are fixed or reliably determinable.

Liabilities for loss contingencies, including environmental remediation costs arising from claims, assessments, litigation, fines, and penalties and other sources, are recorded when it is probable that a liability has been incurred and the amount of the assessment and/or remediation can be reasonably estimated. Recoveries for environmental remediation costs from third parties, which are probable of realization, are separately recorded and are not offset against the related environmental liability.

The Company believes it is currently in compliance with all applicable federal, state and local regulations. Accordingly, no liability or loss associated with environmental remediation was recorded as of December 31, 2018 and 2017.

### Financial Instruments

The Company's financial instruments consist of cash, accounts receivable, accounts payable, accrued liabilities, commodity derivative contracts, the revolving credit facility, the term loan, warrant, and Series A preferred shares. The carrying amount of cash, accounts receivable, accounts payable, and accrued liabilities approximates fair value because of the short-term nature of these items.

The carrying amount of the revolving credit facility and the term loans approximate fair value because the Company's current borrowing rate does not materially differ from market rates for similar borrowings.

The Series A preferred shares were initially measured at fair value using a probability-weighted cash flow model. The carrying value at December 31, 2018 and 2017 still approximates fair value.

See Note 6 - Fair Value Measurements for discussion of the process used in estimating the fair value of commodity derivatives and the warrants.

MATRA_00000005.00012

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

**Fair Value Measurements**

As defined in FASB Accounting Standards Codification ("ASC") Topic 820-10, *Fair Value Measurements* ("ASC 820-10)*, fair value is the price that would be received upon the sale of an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. ASC 820-10 requires disclosure that establishes a framework for measuring fair value and expands disclosure about fair value measurements. The standard requires fair value measurements be classified and disclosed in one of the following categories:

Level 1    Unadjusted quoted prices in active markets that are accessible at the measurement date for identical, unrestricted assets or liabilities. The Company considers active markets as those in which transactions for the assets or liabilities occur in sufficient frequency and volume to provide pricing information on an ongoing basis.

Level 2    Quoted prices in markets that are not active, or inputs which are observable, either directly or indirectly, for substantially the full term of the asset or liability. This category includes those derivative instruments that the Company values using observable market data. Substantially all of the inputs are observable in the marketplace throughout the term of the derivative instrument, can be derived from observable data, or supported by observable levels at which transactions are executed in the marketplace. Instruments in this category include nonexchange-traded derivatives such as over-the-counter commodity price swaps.

Level 3    Measured based on prices or valuation models that require inputs that are both significant to the fair value measurement and less observable from objective sources (i.e. supported by little or no market activity).

As required by ASC 820-10, financial assets and liabilities are classified based on the lowest level of input that is significant to the fair value measurement. The Company's assessment of the significance of a particular input to the fair value measurement requires judgment, and may affect the valuation of the fair value of assets and liabilities and their placement within the fair value hierarchy levels.

**Derivative Transactions**

All derivative instruments are recorded on the consolidated balance sheets at fair value. These derivative transactions are not designated as cash flow hedges under FASB ASC 815, *Derivatives and Hedging*. Accordingly, these derivative contracts are marked-to-market and any changes in the estimated value of derivative contracts held at the balance sheet date are recognized in the consolidated statements of operations as net gain or loss on derivative contracts. The derivative assets or liabilities are classified as either current or noncurrent assets or liabilities based on their anticipated settlement date. The Company nets derivative assets and liabilities for counterparties where it has a legal right of offset.

MATRA_00000005.00013

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

### Use of Estimates

The accompanying consolidated financial statements are prepared in conformity with U.S. GAAP which requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the consolidated financial statements and the reported amounts of revenues and expenses during the reporting period.  Significant assumptions are required in the quantification and valuation of proved oil and natural gas reserves, which as described herein may affect the amount at which oil and natural gas properties are recorded and related depreciation, depletion and amortization and impairment calculations.  Other significant estimates include but are not limited to the valuation of assets and liabilities associated with business combinations, the valuation of put and call options on an overriding royalty interest, valuation of warrants and Series A preferred shares, and the valuation of initially recorded asset retirement obligations.  Actual results could differ materially from these estimates.

### Revenue Recognition

Sales of oil and natural gas are recognized when production is sold to a purchaser at a fixed or determinable price, delivery has occurred, title has transferred, and collectability of the revenue is probable.  Delivery occurs and title is transferred when production has been delivered to a pipeline, railcar or truck.  The sales method of accounting is used for oil and natural gas sales such that revenues are recognized based on the Company's share of actual proceeds from the oil and natural gas sold to purchasers.  Revenues from the production of natural gas and crude oil properties in which the Company has an interest with other producers are recognized based on the actual volumes sold during the period.  Any differences between volumes sold and entitlement volumes, based on the Company's net working interest, which are deemed to be nonrecoverable through remaining production, are recognized as accounts receivable or accounts payable, as appropriate.  For the years ended December 31, 2018 and 2017, there were no significant oil and natural gas imbalances.

### Asset Retirement Obligations

The Company complies with FASB ASC Topic 410-20, *Asset Retirement Obligations* ("ASC 410-20"), which requires the recognition of estimated amounts for asset retirement obligations and asset retirement costs.  ASC 410-20 requires liability recognition for retirement obligations associated with tangible long-lived assets, such as producing well sites.  The obligations included within the scope of ASC 410-20 are those for which an entity faces a legal obligation for settlement.  The initial measurement of the asset retirement obligation is fair value.  The significant unobservable inputs to this fair value measurement include estimates of plugging, abandonment and remediation costs, and well life.  The inputs are calculated based on historical data as well as current estimates.  When the liability is initially recorded, the carrying amount of the related long-lived asset is also increased.  Over time, accretion of the liability is recognized each period, and the capitalized cost is amortized over the useful life of the related asset.  Upon settlement of the liability, any gain or loss is recorded in the consolidated statements of operations.

To estimate the fair value of an asset retirement obligation, the Company employs a present value technique, which reflects certain assumptions, including its credit-adjusted risk-free interest rate, inflation rate, the estimated settlement date of the liability and the estimated current cost to settle the liability.  Changes in timing or to the original estimate of cash flows will result in a change to the carrying amount of the liability and the related long-lived asset.

MATRA_00000005.00014

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

**Debt Issuance Costs**

Debt issuance costs are recorded as a reduction of the related long-term debt and amortized over the term of the debt.  Amortization related to debt issuance costs is included in interest expense on the accompanying consolidated statements of operations.

**Gain from Bargain Purchase of Acquisition of Oil and Natural Gas Properties**

The gain from bargain purchase of acquisitions of oil and natural gas properties represents the excess of fair value over the purchase price of net oil and natural gas properties acquired (Note 4).

**Income Taxes**

Income taxes are accounted for in accordance with FASB ASC 740, *Income Taxes*, under which deferred income taxes are recognized for the future tax effects of temporary differences between the financial statement carrying amounts and the tax basis of existing assets and liabilities using the enacted statutory tax rates in effect at year-end.  The effect on deferred taxes for a change in tax rates is recognized in earnings in the period that includes the enactment date.  A valuation allowance for deferred tax assets is recorded when it is more likely than not that the benefit from the deferred tax asset will not be realized.

The Company is also subject to a margin-based franchise tax law which is commonly referred to as the Texas margin tax and is assessed at a 0.75% rate.  The tax is considered an income tax and is determined by applying a tax rate to a base that considers revenues less the greater of cost of goods sold and employee compensation or 30% of gross revenues.

**Risks and Uncertainties**

Historically, the markets for oil and natural gas have experienced significant price fluctuations.  The price fluctuations can result from variations in weather, geopolitical events, levels of production in the region, availability of transportation capacity to other regions of the country, and various other factors.  Increases or decreases in prices received could have a significant impact on the Company's future results of operations.

**Recent Accounting Pronouncements**

In January 2017, the FASB issued Accounting Standards Update ("ASU") No. 2017-01, *Business Combinations (Topic 805): Clarifying the Definition of a Business* ("ASU 2017-01").  ASU 2017-01 clarifies the definition of a business with the objective of adding guidance to assist entities with evaluating whether transactions should be accounted for as acquisitions (or disposals) of a business or as acquisitions (or disposals) of assets.  ASU 2017-01 is effective for annual periods beginning after December 15, 2018, with early adoption permitted under certain circumstances.  The amendments of ASU 2017-01 should be applied prospectively as of the beginning of the period of adoption.  The Company applied this guidance to its April 1, 2018 acquisition of Oil & Gas assets from CoreTerra, LLC, described more fully below in Note 4 – *Acquisition.*

MATRA_00000005.00015

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

In June 2016, the FASB issued ASU No. 2016-13, *Financial Instruments – Credit Losses (Topic 326): Measurement of Credit Losses on Financial Instruments* ("ASU 2016-13"). ASU 2016-13 eliminates the probable initial recognition threshold in current U.S. GAAP and, instead, requires the measurement of all expected credit losses for financial assets held at the reporting date based on historical experience, current conditions, and reasonable and supportable forecasts. In addition, ASU 2016-13 amends the accounting for credit losses on available-for-sale debt securities and purchased financial assets with credit deterioration. ASU 2016-13 is effective for annual periods beginning after December 15, 2020, with early application permitted in annual periods beginning after December 15, 2018. The amendments of ASU 2016-13 should be applied through a cumulative-effect adjustment to retained earnings as of the beginning of the first reporting period in which the guidance is effective. The Company is currently evaluating the provisions of ASU 2016-13 to determine the impact it will have on its consolidated financial position and results of operations.

In February 2016, the FASB issued ASU No. 2016-02, *Leases (Topic 842)* ("ASU 2016-02"). The guidance in this update supersedes Topic 840, *Leases*. ASU 2016-02 will result in recognizing lease assets and lease liabilities from operating leases on the balance sheet. For leases with a term of 12 months or less, a lessee is permitted to make an election by class of the underlying asset not to recognize lease assets and lease liabilities on the balance sheet. ASU 2016-02 will be effective for fiscal years beginning after December 15, 2018, including interim periods within those fiscal years. The Company is currently evaluating the provisions of ASU 2016-02 to determine the impact it will have on its consolidated financial position and results of operations.

In May 2014, the FASB issued ASU 2014-09, which creates Topic 606, *Revenue from Contracts with Customers*, and supersedes the revenue recognition requirements in Topic 605, *Revenue Recognition*, including most industry-specific revenue recognition guidance throughout the Industry Topics of the Codification. In addition, ASU 2014-09 supersedes the cost guidance in Subtopic 605-35, *Revenue Recognition-Construction-Type and Production-Type Contracts*, and creates new Subtopic 340-40, *Other Assets and Deferred Costs – Contracts with Customers*. In summary, the core principle of Topic 606 is that an entity recognizes revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services. Additionally, ASU 2014-09 requires enhanced financial statement disclosures over the nature, amount, timing and uncertainty of revenue recognition as part of the new accounting guidance. Initially, the amendments for ASU 2014-09 were effective for annual periods beginning after December 15, 2017, including interim periods within that reporting period, and early application was not permitted. In August 2015, the FASB issued ASU No. 2015-14 and agreed to give companies an extra year to comply with the new standard. ASU 2014-09 will be effective for annual reporting periods beginning after December 15, 2018. ASU 2014-09 may be applied retrospectively to each prior period presented, or retrospectively with the cumulative effect recognized as of the date of adoption. The Company is currently evaluating the provisions and methods of adoption of ASU 2014-09 and awaiting guidance to determine the impact, if any, it may have on its consolidated financial position, results of operations and disclosures.

14

MATRA_00000005.00016

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

4. **Acquisition**

**CoreTerra Acquisition**

On June 4, 2018 the Company entered into a Purchase and Sale Agreement with CoreTerra Corporation (CoreTerra) to acquire of all of the equity interest of, or all or substantially all of the assets of CoreTerra, an oil and gas company owned by Melody Capital Partners, LP (Melody) with leases in Gray, Hutchinson, Carson, Montague, Stephens and Shelby counties in Texas (the "CoreTerra Acquisition"). The CoreTerra Acquisition qualified as a business combination for accounting purposes and the Company estimated the fair value of the assets and liabilities acquired as of the transaction date. Transaction costs related to the CoreTerra Acquisition were approximately $90 thousand.

The oil and gas assets acquired from Melody were operated by the Company under an operating agreement with Melody. As consideration for the CoreTerra Acquisition, the Company assumed the existing debt on the assets of $4.0 million and 4,593,435 common shares of Matra Petroleum AB valued at $2.2 million were issued to the seller, for a total of $6.2 million. A gain from bargain purchase of acquisition of oil and natural gas properties of $5.2 million was recognized in operating expenses within the statement of operations for this acquisition as a result of fair market value in excess of the discounted purchase price for the proved reserves. The fair market value of the reserves was in excess of the purchase price given the risk profile of the properties and the general market conditions at the time of acquisition. Acquisition related costs of approximately $90 thousand are include in general and administrative expenses on the Statement of Operations.

The following table summarizes the estimated values of the assets acquired and liabilities assumed and reflect final adjustments to the purchase price provided for by the purchase and sale agreement of approximately $19 thousand to reflect an economic effective date of April 1, 2018.

| | | |
|---|---|---|
| Oil and natural gas properties-proved | $ | 12,023 |
| Inventory | | 78 |
| Assumed Net Debt | | (59) |
| Asset retirement obligations | | (718) |
| Net assets acquired | $ | 11,324 |

5. **Asset Retirement Obligation**

The following table reflects the changes in the asset retirement obligation for the years ended December 31, 2018 and 2017:

| | | 2018 | | 2017 |
|---|---|---|---|---|
| **Balances at beginning of year** | $ | 1,011 | $ | 930 |
| Additional liabilities acquired | | 718 | | 2 |
| Additional liabilities incurred | | 3 | | - |
| Accretion expense | | 110 | | 79 |
| **Balances at end of year** | $ | 1,842 | $ | 1,011 |

15

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

For the years ended December 31, 2018 and 2017, accretion expense as shown above is included in depreciation, depletion, amortization and accretion expense in the accompanying consolidated statements of operations.

**6.    Revolving Credit Facility and Term Loans**

The Company's revolving credit facility at December 31, 2018 and 2017 consists of the following:

|  | 2018 | 2017 |
|---|---|---|
| Legacy revolving facility principal balance | $ 20,000 | $ 20,000 |
| Less:  Deferred loan costs | (44) | (78) |
| Revolving credit facility, net | $ 19,956 | $ 19,922 |

The Company's term loans at December 31, 2018 and 2017 consists of the following:

|  | 2018 | 2017 |
|---|---|---|
| Melody term loan | $ 43,045 | $ 29,368 |
| Melody term loan - Matra Terra | 4,138 | - |
| Legacy term loan | 4,790 | 5,000 |
| Total term loans | 51,973 | 34,368 |
| Less:  Deferred loan costs | (90) | (658) |
| Less:  Original issue and warrant discounts | (280) | (290) |
| Less:  Current maturities | (51,603) | - |
| Term loans, long-term | $ - | $ 33,420 |

All amounts outstanding under the term loans are due in 2019.

Amortization of deferred loan costs, original issue discount and warrant discount totaled $0.65 million and $1.26 million for the years ended December 31, 2018 and 2017, respectively, which is included in interest expense in the accompanying consolidated statements of operations.

**LegacyTexas Bank Credit Agreement**
Effective February 23, 2017, the Company entered into an Amended and Restated Credit Agreement (the "Credit Agreement") with LegacyTexas Bank ("Legacy") as administrative and collateral agent and a syndicate of lenders, with a maturity date of September 30, 2019.  The Credit Agreement includes (i) a $50 million reserve-based revolving credit note (the "Revolving Facility") with an initial borrowing base of $20 million and (ii) a $5 million term loan (the "Legacy Term Loan").

MATRA_00000005.00018

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

Borrowings under the Revolving Facility and the Legacy Term Loan are secured by all of Matra O&G's oil and natural gas assets.  The borrowing base of the Revolving Facility is re-determined on an approximate semi-annual basis.  The amount of the borrowing base is a function of the bank's view of Matra O&G's reserve profile, future commodity prices and projected cash flows.  In the event of a downward revision in the borrowing base, outstanding borrowings in excess of the borrowing base must be repaid.  An increase in the borrowing base must be approved by all lenders.  At closing, the borrowing base was $20 million and the Company had borrowed the full amount.  Legacy is currently the only lender under the Revolving Facility.

Borrowings under the Revolving Facility are available for acquisition, exploration, operation and maintenance of oil and natural gas properties, and to make restricted payments, as defined and allowed under the Credit Agreement.  The Revolving Facility has a sub-limit of $500 thousand, which may be used for the issuance of letters of credit.

Borrowings under the Legacy Term Loan are payable in equal monthly installments of $70 thousand per month, commencing on January 1, 2018, with a final installment of all outstanding principal and unpaid interest due at maturity.  The First Amendment to the Credit Agreement dated March 30, 2018 (the "First Amendment") changed the repayment date to April 1, 2019.

Interest for outstanding borrowings under the Credit Agreement is determined by the lower of (i) the WSJ Prime Rate, plus 0.75%, and (ii) the maximum rate allowed by law, subject to a minimum rate of 5.20% which was the rate at closing.  Matra O&G is also charged a commitment fee equal to 0.30% of the actual daily unused commitment amount.  The First Amendment increased the annual interest rate to 5.25%.

The Credit Agreement contains various covenants that limit, among other things, Matra O&G's ability to incur certain indebtedness, grant certain liens, merge or consolidate, sell all or substantially all of Matra O&G's assets, make certain loans, acquisitions, capital expenditures and investments.  The Facility limits Matra O&G's ability to pay distributions to shareholders and permits it to hedge its projected monthly production, as discussed below, and the interest rate on borrowings.  In addition, Matra O&G is required to maintain certain financial ratios, including requirements to maintain (i) a current ratio, as defined, of not less than 1.0 commencing June 30, 2017; and (ii) a leverage ratio, as defined, of not less than 4.0 to 1.0 for the quarters ending December 31, 2017 and March 31, 2018 and 3.5 to 1.0 thereafter.

The Credit Agreement required the Company's parent, Matra Petroleum AB, to have raised additional capital proceeds of at least $6 million on or before June 30, 2017.  Such proceeds, were to be spent on the development of Matra O&G's oil and natural gas properties by September 30, 2017.

17

MATRA_00000005.00019

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

The Credit Agreement also includes customary events of default, including events of default relating to nonpayment of principal, interest or fees, inaccuracy of representations and warranties in any material respect when made or when deemed made, violation of covenants, cross-defaults, bankruptcy and insolvency events, certain unsatisfied judgments, guaranties not being valid under the Credit Agreement and a change of control. If an event of default occurs, the lenders will be able to accelerate the maturity of the Credit Agreement and exercise other rights and remedies. The Credit Agreement contains a condition to borrowing and a representation that no Material Adverse Event ("MAE") has occurred, which includes, among other things, a material adverse change in, or material adverse effect on the business, operations, property, liabilities (actual or contingent) or condition (financial or otherwise) of Matra O&G and any subsidiaries who are guarantors taken as a whole. If a MAE were to occur, Matra O&G would be prohibited from borrowing under the Credit Agreement and would be in default, which could cause all existing indebtedness under the Credit Agreement to become immediately due and payable.

At December 31, 2017, Matra O&G was not in compliance with certain covenants contained in the Credit Agreement; however, Matra O&G received a waiver of the existing covenant breaches and each default or event of default, resulting from such covenant breaches related to the Credit Agreement. Further, the Credit Agreement was amended effective March 30, 2018 (the "First Amendment"), whereby commencement of principal repayments under the Legacy Term Loan were deferred until April 1, 2019. Furthermore, the hedge requirement was amended whereby less than 50% of the aggregate projected oil and gas production to be hedged through June 30, 2019. As Matra O&G obtained the waiver of the existent covenant noncompliance, no other noncompliance exists as of the date of the issuance of these consolidated financial statements.

As noted above, the maturity date of the Credit Agreement is September 30, 2019. The Company currently does not have sufficient liquidity to meet this obligation and it is also not in compliance with certain covenants as of January 1, 2019. The Company entered into forbearance agreement with its lender on April 26, 2019 which waived all covenant violations for periods from December 31, 2018 to May 26, 2019.

**Term Loan and Warrants**
On July 17, 2015, Matra USA entered into a $20 million multiple advance term loan (the "Term Loan") with a 3% original issue discount with Melody Capital Finance, LLC ("Melody"), an unrelated third party private equity group. Melody provided a $10.89 million advance at closing and provided an additional $7.61 million advance to a restricted bank account in July 2015. The Term Loan is collateralized by substantially all of the Company's assets. The initial loan proceeds were used to pay approximately $4.1 million to settle put options on overriding royalty interests, pay $5 million to Green Bank on the Previous Facility, with the remaining balance to fund the expected drilling program. The Term Loan had an initial maturity date of July 17, 2018, but prepayments could be required upon the event of property sales, insurance/condemnation awards, bond or equity issuances, excess cash flow amounts, and change of control. The Term Loan limits the amount that can be borrowed under the Revolving Credit Facility to $25 million in the aggregate. Interest is charged at 10% plus the greater of the three month Eurodollar Rate or 1% per annum. Accrued but unpaid interest may be added to the outstanding principal balance of the loan.

The Term Loan requires compliance with certain covenants, including a leverage ratio, asset coverage ratio and certain production benchmarks. As of December 31, 2018 and 2017, the Company did not comply with various financial and nonfinancial covenants contained in the Term Loan agreement, including the leverage ratio and the production benchmarks. Effective

18

MATRA_00000005.00020

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

March 30, 2018, the Company executed the Fourth Amendment and Waiver to Loan Agreement, which waived the events of default existing at December 31, 2017.

With the closing of the Term Loan, warrant agreements were also executed with Melody to acquire 111 shares of the Company's common stock, subject to adjustment upon the issuance of certain dilutive securities, at an exercise price of $27,027 per common share. The warrants expire on July 17, 2020. The warrants include a put option allowing the holders to require Matra USA to redeem the warrants at an amount which will provide Melody with an internal rate of return equal to 15% in respect to the aggregate principal amount borrowed under the Term Loan. The put option is triggered on the earliest of (i) date upon which all the principal and interest under the debt agreement has been satisfied in full or (ii) July 17, 2018. The put option also expires on July 17, 2020. The warrants were initially measured at fair value with the proceeds from the Term Loan allocated first to the warrants with the remainder allocated to the Term Loan. Fair value was estimated using a discounted cash flow model based on estimated future cash redemption of the warrants. Effective February 23, 2017, the Company executed the Third Amendment to Loan Agreement which among other things, terminated the outstanding warrants for consideration of $1.56 million, with such amount being added to the outstanding balance of the Term Loan.

On February 23, 2017, simultaneous with the executing of the Credit Agreement described above, the Company entered into the Second Amendment and Waiver to Loan Agreement (the "Second Amendment") and the Third Amendment to Loan Agreement (the "Third Amendment").

The Second Amendment extended the maturity date of the Term Loan to December 31, 2019. The Second Amendment also changed the interest rate on the Term Loan from the three-month Eurodollar Rate plus 10% to the one-month Eurodollar Rate plus 10%, waived various financial and nonfinancial covenant violations of the Company, and amended and restated certain covenants, including the leverage ratio and production benchmarks.

Under the terms of the Second Amendment, the Company or its parent company, Matra Petroleum AB, shall raise additional capital of at least $4.6 million by June 30, 2017, with such proceeds being used in the development of the Company's oil and natural gas properties by September 30, 2017. To the extent that the Company and/or Matra Petroleum AB raise capital in excess of $4.6 million, the first $1 million shall be invested or applied, at the Company's option, towards further development of the Company's oil and natural gas properties, pay down of the Term Loan, or repayment of certain approved liabilities of the Company. Upon satisfaction of these conditions, Melody will release Matra Operating from its obligations as a guarantor and collateral provider.

In addition, the Company or Matra Petroleum AB shall raise an additional $5 million of capital no later than December 31, 2017, with such proceeds being used, at the Company's option, towards development of the Company's oil and natural gas properties or pay down of the Term Loan.

Melody reserves the right to designate a person, as defined, or representative to attend and observe all meetings of the Company's Board of Directors. Failure by the Company to provide advance notice of a Board meeting results in a $50 thousand fine.

As noted above, the Third Amendment terminated the outstanding warrants for consideration of $1.56 million, with such amount being added to the outstanding balance of the Term Loan. The Third Amendment also increased the interest rate on the Term Loan to the one-month EuroDollar rate, plus 14%.

MATRA_00000005.00021

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

Effective March 30, 2018, the Company entered into the Fourth Amendment and Waiver to Loan Agreement (the "Fourth Amendment").  The Fourth Amendment increases the existing loan commitment under the Term Loan by up to $10 million of capital to fund the Company's 2018 drilling and development program.  The Fourth Amendment waived various financial and nonfinancial covenant violations of the Company, and amended and restated certain covenants, including the leverage ratio and production benchmarks. As of December 31, 2018 the Company was not in compliance with the amended and restated covenants.  The Company obtained waivers from the lender for covenant violations as of December 31, 2018.

On June 4, 2018 (the "Closing Date"), the Company assumed a $4 million term loan (the "Fixed Rate Term Loan") with Melody Capital Finance, LLC ("Melody"), an unrelated third party private equity group.  The Term Loan is collateralized by substantially all of the Company's assets.  The loan proceeds in full were used to finance the acquisition of CoreTerra's properties (Note 4).  The Fixed Rate Term Loan had an initial maturity date of December 31, 2019.  Interest is charged at 7% per annum.  From the Closing Date through and including December 31, 2018, interest shall be payable in kind in arrears on the last day of each Fiscal Quarter (the "Interest Payment Date"), commencing with the Interest Payment Date occurring on June 30, 2018.  Accrued but unpaid interest may be added to the outstanding principal balance of the loan.  From and after January 1, 2019, interest shall be payable in cash in arrears on the Interest Payment Date.

As noted above, the maturity date of the Term Loan is December 31, 2019.  The Company currently does not have sufficient liquidity to meet this obligation and it is also not in compliance with certain covenants as of January 1, 2019.  The Company entered into forbearance agreement with its lender on April 26, 2019 which waived all covenant violations for periods from December 31, 2018 to May 26, 2019

7. **Fair Value Measurements**

The following table sets forth by level within the fair value hierarchy the Company's financial assets and liabilities that were accounted for at fair value on a recurring basis as of December 31, 2018:

| Description | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) |
|---|---|---|---|
| **Financial assets** | | | |
| Oil and natural gas commodity derivative swaps and collars | $ - | $ 129 | $ - |

MATRA_00000005.00022

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

The following table sets forth by level within the fair value hierarchy the Company's financial assets and liabilities that were accounted for at fair value on a recurring basis as of December 31, 2017:

| Description | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) |
|---|---|---|---|
| **Financial liabilities** | | | |
| Oil and natural gas commodity derivative swaps and collars | $ - | $ 382 | $ - |

The Company estimates the fair values of the commodity swaps and collars based on published forward commodity price curves for the underlying commodity as of the date of the estimate for which published forward pricing is readily available. The determination of the fair values above incorporates various factors including the impact of the Company's nonperformance risk and the credit standing of the counterparty involved in the Company's derivative contracts. In addition, the Company routinely monitors the creditworthiness of its counterparty.

The Company estimated the fair value of the warrants using a discounted cash flow model based on the estimated amount and timing of future cash redemption of the warrants.

**Fair Value on a Nonrecurring Basis**
The Company discloses or recognizes its nonfinancial assets and liabilities, such as the impairments of oil and natural gas properties, the initial recognition of asset retirement obligations, and the initial recognition of the Series A preferred stock issuance at fair value on a nonrecurring basis.

Estimates for the initial recognition of asset retirement obligations are derived from historical costs as well as management's expectation of future cost environments. As there is no corroborating market activity to support the assumptions used, the Company has designated these liabilities as Level 3. A reconciliation of the beginning and ending balances of the Company's asset retirement obligation is presented in Note 5.

8.   **Derivative Transactions**

The Company utilizes derivative instruments to manage its exposure to fluctuations in the underlying commodity prices of crude oil and natural gas sold by the Company. The Company's management sets and implements hedging policies, including volumes, types of instruments and counterparties, to support oil and natural gas prices at targeted levels and manage its exposure to fluctuating prices.

21

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

The Company's derivative instruments consist of swap and collar arrangements for oil and natural gas.  In a commodity swap agreement, if the agreed-upon published third-party index price ("index price") is lower than the swap fixed price, the Company received the difference between the index price and the swap fixed price.  If the index price is higher than the swap fixed price, the Company pays the difference.  For collar arrangements, the Company receives the difference between an agreed-upon index and the floor price if the index price is below the floor price.  The Company pays the difference between the agreed-upon ceiling price and the index price if the index price is above the ceiling price.  For the years ended December 31, 2018 and 2017, net cash settlements received on these derivative contracts totaled $951 thousand and $662 thousand, respectively.

The mark-to-market effects of these contracts as of December 31, 2018 are summarized in the following table.  The notional amount is equal to the total net volumetric derivative position during the periods indicated.  The fair value of the crude oil and natural gas swap agreements is based on the difference between the strike price and the New York Mercantile Exchange futures price for the applicable trading months.

| Contract Type | Contract Period | Weighted Average Strike Price | Weighted Average Floor Price | Weighted Average Ceiling Price | Remaining Volume (MMbtus/ Barrels) | Fair Value |
|---|---|---|---|---|---|---|
| Collar | Jan 2019 - Mar 2019 | - | 50.00 | 77.30 | 10,800 | 59 |
| Put | Mar 2019 - Jun 2019 | - | 50.00 | - | 10,920 | 70 |

The carrying values of the Company's derivatives positions and their locations on the consolidated balance sheets as of December 31, 2018 and 2017 are presented in the table below:

| Balance Sheet Classification | Contract Type | 2018 | 2017 |
|---|---|---|---|
| Current assets | Crude oil swaps | $ 59 | $ - |
| | Crude oil collars | 70 | - |
| | | 129 | - |
| Current liabilities | Crude oil swaps | - | (80) |
| | Crude oil collars | - | (377) |
| | Natural gas collars | - | 75 |
| | | - | (382) |
| Non-current liabilities | Crude oil swaps | - | - |
| | Crude oil collars | - | - |
| | | - | - |
| Total derivatives | | $ 129 | $ (382) |

MATRA_00000005.00024

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

**9.     Related Parties**

During 2018, the Company paid various expenses totaling $34 thousand on behalf of Matra plc, a shareholder of the Company which was recorded in the income statement as Mata plc was liquidated in 2018.  As of December 31 2017, the balance was included in accounts receivable – other in the consolidated balance sheets.

Following transactions occurred with Matra AB in 2018.  Matra AB billed a total amount of $280 thousand in management fees to the Company in 2018 (2017: $0).  As of December 31, 2018, the $30 thousand was unpaid and is included in accounts receivable – other in the consolidated balance sheets.  Furthermore, Matra AB borrowed $25 thousand in 2018 (2017: $32 thousand) which was unpaid and is included in accounts receivable – other in the consolidated balance sheets as of December 31, 2018 and 2017.  As consideration for the CoreTerra Acquisition, 4,593,435 common shares of Matra Petroleum AB valued at $2.2 million were issued to Melody (Note 4).

**10.     Commitments and Contingencies**

The Company is the defendant in the case Bright Land & Cattle, LLC vs. PG-M International, LLC (n/k/a Matra Petroleum Oil & Gas, LLC); PG-M International Operating, LLC (n/k/a Matra Petroleum Operating, LLC); and Matra Petroleum USA, Inc. in the 100th District Court of Carson County, Texas.  The plaintiff is the surface owner of a certain oil and natural gas lease held by the Company and claims surface damages requiring remediation.  The Company is currently in negotiations with the plaintiff to settle the matter and is optimistic it will be resolved in the near-term.  As of the date of the issuance of these financial statements, management does not believe the ultimate resolution of the case will have a significant affect on the Company's financial position or results of operations.

In March 2018, the Company was notified a former director initiated an arbitration proceeding by filing an Arbitration Demand for an alleged breach of an employment agreement and Matra USA filed a counterclaim. In October 2018, the Arbitrator issued an opinion in the plaintiff's favour, which Matra USA moved to vacate in the United State Southern District court. A court hearing was held in January 2019. In February 2019, the court confirmed the Arbitration award to the former director. Matra is evaluating financing and settlement options for the award. The awarded compensation has been accrued in the financial statements.

23

MATRA_00000005.00025

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

11.    **Lease Obligations**

The Company has entered into vehicle capital leases and recorded gross leased assets of $435 thousand and capital lease obligations of $207 thousand.  These leases extend over a 36-month and a 60-month terms with expected payments as follows:

| Year Ending December 31, | | |
|---|---|---:|
| 2019 | $ | 90 |
| 2020 | | 110 |
| 2021 | | 10 |
| 2022 | | 9 |
| 2023 | | 8 |
| | | 227 |
| Less: Interest | | (20) |
| **Present value of future minimum lease payments** | | 207 |
| Less: Current portion | | 148 |
| **Long-term capital lease payable, net of current portion** | $ | 59 |

The Company subleases office space in Houston, Texas with the term extending through May 2021.  In December 2016, the Company amended the lease agreement to defer 50% of the monthly contractual obligation during the period August 2016 through May 31, 2019, at which time the deferral amount is due in full.  Deferred amounts are subject to a 1.5% interest rate per annum. At December 31, 2018, expected minimum lease payments for each of the next five years are as follows:

| Year Ending December 31, | | |
|---|---|---:|
| 2019 | $ | 249 |
| 2020 | | 118 |
| 2021 | | 50 |
| 2022 | | - |
| 2023 | | - |
| | $ | 417 |

The Company recognized rent expense of $194 thousand and $193 thousand for the years ended December 31, 2018 and 2017, respectively, which is included in general and administrative expenses in the accompanying consolidated statements of operations.

24

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

12.   **Income Taxes**

The composition of deferred tax assets and liabilities at December 31, 2018 and 2017 is as follows:

|  | | 2018 | | 2017 |
|---|---|---|---|---|
| **Deferred tax assets (liabilities)** | | | | |
| Net operating loss carryforwards | $ | 13,846 | $ | 9,558 |
| Basis of oil and natural gas properties | | (7,895) | | (4,465) |
| Basis of other property and equipment | | - | | 8 |
| Warrants | | 396 | | 385 |
| Commodity derivatives | | 27 | | (83) |
| Net deferred tax asset | | 6,374 | | 5,403 |
| Less:  Valuation allowance | | (6,374) | | (5,403) |
| Net deferred tax asset | $ | - | $ | - |

Due to the losses from operations in 2018, 2017 and 2016 and uncertainty regarding the likelihood of future taxable income, the Company currently believes it is not more likely than not that sufficient future taxable income will be generated to utilize its deferred tax assets.  As of December 31, 2018 and 2017, the Company has recorded a valuation allowance against the portion of deferred tax assets dependent upon the generation of future taxable income.   As of December 31, 2018, the Company has approximately $67 million of net operating losses expiring between 2033 and 2038.   Realization of the Company's deferred tax assets, specifically the net operating loss carryforwards is depend on the Company's ability to generate taxable income during the carryforward period.  Further, the benefit from utilization of net operating loss carryforwards could be subject to limitations due to material ownership changes that may or may not occur in the Company.

In December 2017, the President of the United States of America signed into law the Tax Cuts and Jobs Act (the "Tax Reform Act").  The Tax Reform Act permanently reduces the U.S. corporate income tax rate from 34% to 21%, effective January 1, 2018.  As a result of the reduction in the U.S. corporate income tax rate, the Company revalued its ending deferred tax assets and liabilities at December 31, 2017, resulting in a reduction in deferred tax assets of approximately $3.5 million with a corresponding reduction in its valuation allowance resulting in no income tax provision.

MATRA_00000005.00027

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

A reconciliation of the federal statutory income tax rate of 21% to the income tax expense as reported by the Company for the years ended December 31, 2018 and 2017 is as follows:

| Description | 2018 | | 2017 | |
|---|---|---|---|---|
| Income tax benefit at federal statutory rate | $ | 931 | $ | 2,768 |
| Permanent differences | | (10) | $ | - |
| Miscellaneous differences | | 50 | | (48) |
| Effect of change in enacted tax rate | | - | | (3,507) |
| Change in valuation allowance | | (971) | | 787 |
| Income tax benefit | $ | - | $ | - |
| Effective income tax rate | | 0.0 % | | 0.0 % |

The Company accounts for uncertainty in income taxes for tax positions taken or expected to be taken in a tax return. The Company recognizes the tax benefit from an uncertain tax position only if it is more likely than not that the tax position will be sustained upon examination by the taxing authorities, based on the technical merits. At December 31, 2018 and 2017, the Company had no uncertain tax positions.

At December 31, 2018 and 2017, the Company evaluated its open tax years in all known jurisdictions. Based on this evaluation, the Company's tax years 2015 and forward are subject to federal tax examination. As of the date these financial statements were issued, the Company has not filed its federal or state tax returns for tax years 2016, 2017 and 2018. The Company accrued for $30 thousand of estimated penalties in regards to the certain late tax forms in 2014, 2015, 2016 and 2017.

13. **Preferred Shares**

The Company has 100 shares of Series A preferred shares outstanding at both December 31, 2018 and 2017, held by Rovelo. The Series A preferred shareholders are not entitled to receive dividends. As long as any Series A preferred shares are outstanding, the Company cannot declare dividends to or repurchase shares from the common shareholders with the exception of stock dividends junior to the Series A preferred shares. On any voluntary or involuntary liquidation, dissolution, or winding up of Matra USA, the Series A preferred shareholders are to receive a liquidation preference of approximately $26 thousand per share before any amount is paid to the common shareholders. If the amount to be liquidated is less than the liquidation preference then the Series A preferred shareholders receive all the proceeds. After payment to the Series A preferred shareholders, Matra USA's remaining assets will be distributed to the common shareholders.

Matra USA, at the option of the Board of Directors, may at any time redeem wholly or in part the outstanding Series A shares for approximately $26 thousand per share. The Series A preferred shareholders have no voting rights but must approve by a two-thirds majority any amendment, alteration or repeal of an article of the certificate of incorporation which would materially and adversely impact the preference, rights, and voting power of the Series A preferred shares. Additionally, pursuant to the Term Loan described in Note 5, the repurchase of any equity interests are not permitted without the consent of Melody. As the consent of Melody is required to redeem the Series A preferred shares, redemption is not deemed to be entirely within the control of the

26

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

Company; therefore, the preferred shares have been recorded within Mezzanine equity on the accompanying consolidated balance sheets.

The Series A preferred shares were recognized at fair value of approximately $1.8 million at the issuance date.  The Company does not believe the Series A preferred shares are currently redeemable or are probable of redemption as redemption would require the consent of Melody and therefore, the Series A preferred shares will not be re-measured until redemption can occur or becomes probable of occurring.  Should those redemption criteria be met in the future, U.S. GAAP requires that the Series A preferred shares be measured at its maximum redemption value of $2.56 million and the resulting change be reflected as a loss within the consolidated statements of operations.

## 14.   Credit Risk

The credit risk from over-the-counter derivative contracts, such as forwards and swaps, derives from the counterparty to the transaction, typically a major bank or financial institution.  These credit exposures, including the continual exposure adjustments that result from market movements, are closely monitored by management of the Company.  Individual counterparty exposure is managed within certain limits.

Accounts receivable - oil and natural gas production results from oil and natural gas sales to third party customers.  The majority of these receivables have payment terms of 30 days or less, and management continually monitors this exposure and the creditworthiness of the customers.  The Company does not generally require collateral to limit the exposure to loss; however, it will sometimes use letters of credit or prepayments to mitigate credit risk with customers.

## 15.   Sales to Major Customers

Oil and natural gas production representing 99% or more of total revenues for the years ended December 31, 2018 and 2017 were sold to major customers as shown below:

| Customer | 2018 | 2017 |
|---|---|---|
| **Oil and natural gas revenue for the year** | | |
| Customer A | 64 % | 57 % |
| Customer B | 35 | 38 |
| **Accounts receivable – oil and natural gas production at year end** | | |
| Customer A | 56 % | 31 % |
| Customer B | 38 | 64 |

In the exploration, development and production business, production is normally sold to relatively few customers.  Substantially all of the Company's customers are concentrated in the oil and natural gas industry and revenue can be materially affected by current economic conditions, the price of certain commodities such as crude oil and natural gas and the availability of alternate purchasers.  The Company believes that the loss of any of its major purchasers would not have a long-term material adverse effect on its operations.

MATRA_00000005.00029

**Matra Petroleum USA, Inc.**
**Notes to Consolidated Financial Statements**
**December 31, 2018 and 2017**

*(dollar amounts in thousands)*

**16.   Subsequent Events**

In March 2018, the Company was notified a former director initiated an arbitration proceeding by filing an Arbitration Demand for an alleged breach of an employment agreement and Matra USA filed a counterclaim. In October 2018, the Arbitrator issued an opinion in the plaintiff's favor, which Matra USA moved to vacate in the United State Southern District court. A court hearing was held in January 2019. In February 2019, the court confirmed the Arbitration award to the former director. Matra is evaluating financing and settlement options for the award. The awarded compensation has been accrued in the financial statements.

The Company reviews events occurring after the balance sheet date which could affect its consolidated financial position and/or results of operations for the period.  The Company evaluated subsequent events through April 30, 2019, which is the date the consolidated financial statements were available to be issued and has concluded there are no additional events to be reported.

MATRA_00000005.00030